# UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-6340

WILLIAM J. MARTINI
    JUDGE

## LETTER OPINION

May 16, 2007

Abraham S. Alter
Langton & Alter
P.O. Box 1798
2096 St. Georges Avenue
Rahway, NJ 07065

    (*Attorney for Plaintiff*)

Christopher J. Christie, United States Attorney
Kimberly L. Schiro, Special Assistant United States Attorney
Barbara L. Spivak (of Counsel), Chief Counsel - Region II
c/o Social Security Administration
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278

    (*Attorneys for Defendant*)

    RE:    **Zonak v. Commissioner of Social Security**
               **Civ. No. 05-5995 (WJM)**

Dear Counsel:

    Joseph C. Zonak ("Zonak") originally brought this action pursuant to 42 U.S.C. § 405(g) (2006) of the Social Security Act, seeking review of a final determination by the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). Zonak died on December 15, 2006 during the pendency of the instant appeal. The Court subsequently ordered that Zonak's wife, Nora T. Zonak, be substituted as Plaintiff in this

matter pursuant to Rule 15 of the Federal Rules of Civil Procedure. No oral argument was held on this appeal. Fed. R. Civ. P. 78. For the following reasons, the Commissioner's decision is **AFFIRMED**.

## Background and Procedural History

Zonak applied for DIB on June 6, 2003, alleging disability due to cardiomypathy, coronary artery disease, congestive heart failure, high blood pressure and gout. (R. at 46-48, 56, 65.) This application was denied initially and on reconsideration. (R. at 29-34, 38-40.) Zonak requested a hearing, which was held before Administrative Law Judge Richard L. De Steno (the "ALJ") on January 6, 2005. In a hearing decision dated January 28, 2005, ALJ De Steno denied Zonak's application for benefits. (R. at 26.)

Applying the familiar five-step analysis for determining whether a claimant is disabled, the ALJ first found that Zonak had not engaged in any substantial gainful activity since his alleged onset date of May 14, 2003. (R. at 20.) Then, at step two, he found that the evidence established the existence of a severe impairment involving coronary artery disease, congestive heart failure, cardiomyopathy, hypertension, obesity and gouty arthritis. (R. at 21.) Nonetheless, at step three, the ALJ determined that Zonak's impairments did not meet or equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, and concluded that Zonak retained a residual functional capacity to perform the full range of sedentary work. (R. at 21-23.) At step four, the ALJ determined that Zonak was unable to return to his past relevant work, which involved loading and unloading propane cylinders weighing about fifty pounds each. (R. at 24.) Finally, at step five, the ALJ found that Zonak was capable of making an adjustment to other work that existed in significant numbers in the national economy. (R. at 24-25.)

Therefore, the ALJ determined that Zonak was not disabled and, accordingly, not entitled to DIB. (R. at 25-26.) The Appeals Council denied review on October 28, 2005. (R. at 4-6.)

Zonak appeals this ruling. He argues that (1) the ALJ's finding that his impairments did not meet or equal a listing is in error, and was based on an improper evaluation of the relevant medical evidence; (2) the ALJ improperly assessed the credibility of his complaints of pain; and (3) the ALJ erred in finding that he was capable of performing the full range of sedentary work.[1]

---

[1] The Court feels compelled to note that Plaintiff's brief fails to conform to Local Civil Rule 9.1(a)(3), which sets forth requirements for plaintiffs' briefs in social security matters, in several important respects. First, Local Rule 9.1(a)(3)(D) specifies that within the argument section, "[e]ach contention must be supported <u>by specific reference to the portion of the record relied upon</u> and by citations to statutes, regulations and cases supporting plaintiff's position." (Emphasis added.) The argument section of Plaintiff's brief, however, contains absolutely no page citations to any portion of the record aside from the ALJ's opinion, which forced the Court to undertake a significant amount of extra work. Second, Local Rule 9.1(a)(3)(C) requires that the argument section of the brief be divided into sections that <u>separately treat</u> each issue. While

In a letter filed with the Court on December 20, 2006, Plaintiff's Counsel stated that Zonak had died on December 15, 2006 of "coronary artery disease, congestive heart failure, cardiomyopathy, hypertension and obesity." Zonak's appeal is now before the Court.

## Standard of Review

In reviewing ALJ De Steno's decision, the district court exercises plenary review over his legal conclusions and is bound by his factual findings that are supported by substantial evidence, *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000), as the court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Woody v. Secretary of Health & Human Servs.*, 859 F.2d 1156, 1159 (3d Cir. 1988) (stating that substantial evidence is "more than a mere scintilla but may be less than a preponderance"). Thus, this Court's inquiry is whether the record, read in its entirety, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the Commissioner. "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

## Discussion

### A.    The ALJ's Assessment of the Medical Evidence

Zonak contends that the ALJ's assessment of the medical evidence is not supported by substantial evidence. In particular, he argues that (1) the ALJ's finding that his impairments did not meet or equal a listing was in error; (2) even if he narrowly missed meeting a listing, his individual impairments, taken together, clearly equaled a listing; and (3) the ALJ failed to consider his obesity and its effect on his impairments.

#### 1.    Whether Zonak's Impairment "Meets or Equals" a Listing

To be presumptively disabled at step three of the analysis, a plaintiff must furnish evidence which demonstrates that his impairments met or equaled the criteria of an impairment

---

Plaintiff's brief in this case contains two headings within the argument section, the issues raised are not in fact isolated or treated separately, but are scattered and repeated throughout what is altogether a rambling and disorganized brief. The Court strongly cautions Plaintiff's counsel to adhere to Local Civil Rule R. 9.1(a)(3) in the future. Finally, the Court also notes that Counsel's brief is replete with excessive hyperbole and inappropriate personal attacks on the ALJ, tactics which do not advance Plaintiff's arguments and are not helpful to the Court in discerning the relevant issues on this appeal.

listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d); *Sykes*, 228 F.3d at 262-63. Zonak argues that the ALJ erred in determining that his impairments, though severe, were not severe enough to meet or medically equal one of the listed impairments. Specifically, Zonak contends that because his ejection fraction was thirty percent at a certain point in the record, he met or equaled the criteria in listings 4.03, 4.04 and 4.05 for cardiac impairments. (Pl.'s Br. 18.) At the hearing before ALJ De Steno, Zonak's counsel also argued this point, and asked the ALJ to seriously consider whether Zonak met listings 4.04B and 4.04C.

In concluding that Zonak's impairments failed to meet or equal a listing, ALJ De Steno noted that particular attention had been given to section 4.03, hypertensive cardiovascular disease, and section 4.04, ischemic heart disease. (R. at 18.) The ALJ stated that the criteria for 4.04 were not met because Zonak had no ischemic ECG changes, and did not experience chest pain, in connection with a cardiac stress test conducted on June 6, 2000. (R. at 18, 126-27.) In the test, Zonak was exercised on Bruce Treadmill Protocol for 5 minutes, achieving a heart rate of 152 BPM, which was almost equivalent to eighty-five percent of the predicted heart rate for his age. (R. at 18, 126-27.) His blood pressure response was within normal limits. (R. at 18, 126-27.) The ALJ noted Zonak's thirty percent ejection fraction reading on September 5, 2001, but observed that Zonak had many other subsequent ejection fraction readings that were well above that level. (R. at 21.) Specifically, Zonak's ejection fraction was forty-five percent in October 2001, between thirty and forty percent in February 2002, and forty-five percent in June 2003. (*Id.*) The ALJ noted that section 4.03, hypertensive cardiovascular disease, merely refers to section 4.02 and 4.04 or the criteria for any other body system. (R. at 18.) The ALJ compared Zonak's impairments to listings 4.03, 4.02, 2.02 through 2.04, 6.02 and 11.04A and B, and concluded that Zonak's impairments, though severe, did not meet or equal any of those listings.

In *Burnett v. Commissioner of Social Security*, the Third Circuit held that the ALJ must "set forth the reasons for his decision," and that an ALJ's bare conclusory statement that an impairment did not match, or is not equivalent to, a listed impairment was insufficient. *See* 220 F.3d 112, 119-20 (3d Cir. 2000). Elaborating on this standard in *Jones v. Barnhart*, the Third Circuit held that "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." 364 F.3d at 505. *Jones* explained that a reviewing court must look at the ALJ's decision as a whole to determine whether the ALJ "considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing." *Id.* Here, the ALJ did not dismiss Zonak's arguments with a conclusory statement, but engaged in a reasoned and detailed discussion of Zonak's impairments in the context of the relevant listings. The Court finds that the ALJ's conclusion that Zonak's impairments did not meet or equal any listing was supported by substantial evidence.

### 2. Failure to Consider the Combined Effect of Zonak's Impairments

Zonak next argues that the ALJ erred by not considering whether the cumulative effect of

4

his impairments equaled a listing. (Pl.'s Br. 10-12, 20-22.) Generally, an ALJ must analyze the cumulative effect of all of a claimant's impairments in determining whether he is capable of performing work or is disabled. *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999) (citing 20 C.F.R. § 404.1523). With respect to listed impairments, where an individual has a combination of impairments, none of which meets a listing, an ALJ must compare the medical findings with those for closely analogous listed impairments; if the findings are at least of equal medical significance to those of a listed impairment, then the ALJ must find that the combination of impairments is medically equivalent to that listing. 20 C.F.R. § 404.1526(b)(3).

The listings describe impairments which are considered "severe enough to prevent an individual from doing any gainful activity." 20 CFR § 404.1525(a). It is clear from the ALJ's decision that he considered Zonak's impairments in combination in reaching the conclusion that Zonak's combination of impairments were *not* severe enough to prevent him from engaging in any gainful activity. (R. at 22.) ALJ De Steno discusses Zonak's impairments and limitations at length, but ultimately concludes that "[w]hile the record establishes that the claimant has several impairments, and I have assessed extensive limitation by restricting his residual functional capacity, the record also shows that he is able to function well within the parameters of sedentary exertion" despite his condition. (R. at 20-22.) Upon review of this analysis, the Court cannot conclude that the ALJ failed to consider Zonak's impairments in combination when making his findings at step three. In so finding, the court notes that an ALJ is not required to use "magic words" in his analysis or adhere to a particular format, as long as he sufficiently develops the record to permit meaningful judicial review. *See Sassone v. Commissioner*, 165 Fed. Appx. 954, 959 (3d Cir. 2006) (citing *Jones*, 364 F.3d at 505).

### 3.     The ALJ's Failure to Consider Zonak's Obesity

Zonak contends that the ALJ failed to properly consider his obesity, either alone or in combination with his other impairments. (Pl.'s Br. 13-15, 19-20.) In support of this argument, Zonak's counsel relies heavily on his client's height/weight ratio, repeatedly characterizing Zonak as five feet tall and 280 pounds, and implying that this extreme height/weight ratio alone necessarily evidences significant exertional and non-exertional limitations. (Pl.'s Br. 9, 13, 14, 15, 19.) On this point, the Court notes a discrepancy in the record as to Zonak's height. Although Dr. Francky Merlin's report identifies Zonak's height as 60 ½ inches (R. at 280), a fact recited in the ALJ's opinion, the ALJ also correctly recounts Zonak's own testimony that his height was 6'1". (R. at 19, 20, 23, 352.) Based on Zonak's testimony, in conjunction with the fact that every other reference to Zonak's height in the record, including by his treating physician, indicates that he was 6'0" or 6'1" (R. at 56, 64, 120-24, 331, 333), the Court finds that to the extent that Zonak's counsel relies on height/weight ratio as an obvious indicator of Zonak's limitations, his arguments are misplaced.

Moreover, it is evident that the ALJ considered obesity in evaluating Zonak's limitations, because he specifically found obesity to be a severe impairment. (R. at 21.) Although the ALJ's discussion of Zonak's obesity was somewhat conclusory, remand is not warranted on this issue,

5

which would not affect the outcome of the case. *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). Zonak did not allege disability due to obesity, and at the hearing before ALJ De Steno, neither Zonak nor his counsel discussed Zonak's obesity or described how it contributed to his other limitations. In subsequent filings, Zonak has argued that the ALJ's discussion of obesity was deficient. (R. at 340-41, Pl.'s Br. 13-15.) However, he has not specified how obesity contributed to his limitations, nor has he cited any medical evidence that mentions obesity as contributing to his limitations. *See Rutherford*, 399 F.3d at 553.

The ALJ duly noted Dr. Merlin's opinion that Zonak was obese and needed to enroll in a weight-reduction program. (R. at 19, 23.) However, Dr. Merlin's diagnosis did not link obesity to any of Zonak's other conditions, and the record contains no other medical evidence discussing Zonak's obesity or linking it to any impairment or disability. *See Rutherford*, 399 F.3d at 553. Furthermore, Dr. Merlin, the very doctor who diagnosed Zonak's obesity, also concluded that Zonak was nonetheless still capable of performing light exertional work — a finding explicitly rejected by ALJ De Steno, who concluded that Zonak's impairments imposed more significant limitations on his exertional abilities and restricted him to sedentary work. Therefore, the Court cannot conclude that the ALJ failed to properly consider Zonak's obesity.

In sum, the Court does not find that the ALJ erred in his assessment of the medical evidence. Therefore, Zonak's argument on this ground is denied.

### B.     The ALJ's Analysis of Zonak's Ability to Work

Zonak contends that the ALJ erred in finding that he is able to perform the full range of sedentary work. (Pl.'s Br. 10, 22-33.) Specifically, Zonak argues that the ALJ failed to articulate satisfactory reasons for (1) rejecting Dr. Ashok Kumar's opinion that Zonak was disabled; (2) rejecting Zonak's subjective complaints of pain; and (3) formulating his RFC.

#### 1.     The ALJ's Rejection of Dr. Kumar's Conclusion on Disability

Zonak argues that the ALJ improperly rejected Dr. Kumar's opinion that Zonak was unable to return to work, until further notice, as of May 20, 2003. (Pl.'s Br. 26-29; R. at 132.) Zonak contends that the opinion of Dr. Kumar, as his treating cardiologist, should have been afforded particular deference. (Pl.'s Br. 28.) The ALJ concluded that Dr. Kumar's opinion that Zonak was disabled was not entitled to significant weight because (1) to the extent that such an opinion was taken to indicate disability having a twelve-month duration, it was without substantial support by Dr. Kumar's own objective findings or the other evidence of record; and (2) the issue of disability and inability to work is an issue reserved to the Commissioner. (R. at 23-24.) Defendant correctly argues, however, that although a treating physician's medical opinion regarding the nature and severity of an individual's impairments may be entitled to controlling weight, no special significance is given to the source of an opinion on an issue reserved to the Commissioner. (Def.'s Br. 9; 20 C.F.R. §§ 404.1527(d)(2), 404.1527(e)(1)-(2).) The Court finds that the ALJ properly articulated his reasons for not affording controlling or

significant weight to Dr. Kumar's opinion that Zonak was unable to return to work, and that the ALJ's decision on this issue is supported by substantial evidence.

### 2.      Credibility of Zonak's Complaints of Pain

Zonak contends that the ALJ improperly discredited his subjective complaints of disabling pain and other limitations.  It is well-established that an ALJ is required to determine the extent to which the claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.  *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (citing 20 C.F.R. § 404.1529(c)).  Under the current statutory regime, a claimant's statements about his pain do not alone establish disability.  42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529(c).  Rather, a disability must be proven through objective medical evidence.  Furthermore, the ALJ should consider a claimant's daily activities, the location, frequency, and intensity of the pain and symptoms, the type and dosage of pain medication, and any other measures used to relieve the alleged pain.  20 C.F.R. § 404.1529(c)(3).  In making such determinations, the ALJ is given great discretion, and his findings are entitled to judicial deference.  *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983).

Here, the ALJ's analysis of Zonak's subjective complaints was supported by substantial evidence.  The ALJ did not entirely dismiss Zonak's subjective complaints, but concluded that "[a]lthough there are medically determinable impairments that could reasonably cause some of the symptoms alleged; I cannot find the allegations credible to the extent alleged." (R. at 22.) The ALJ cited specific record evidence to support his conclusion that Zonak's pain was not entirely disabling.  The ALJ properly noted that the balance of the treatment records in this case relate to the frame when Zonak was still gainfully employed, and in a job which required frequent heavy lifting and other exertion.  (*Id.*)  The ALJ also discussed reports from Zonak's treating cardiologist, Dr. Kumar, noting that Dr. Kumar indicated on March 28, 2002, six months after Zonak's second cardiac catheterization, that Zonak could go back to work; that Dr. Kumar classified Zonak's cardiac functional capacity as Class II, requiring a slight limitation of physical activity; and that Zonak continued to visit Dr. Kumar approximately once a month from March 2003 to November 2004, complaining of tiredness, mild shortness of breath and swelling of his feet, but also reporting that he felt much better and denying chest pain, shortness of breath or palpitations.  (*Id.*)  The ALJ also cited a January 5, 2004 Holter Report which revealed no significant arrhythmias.  Zonak's allegations of twice-monthly gouty arthritic attacks were also addressed; the ALJ noted that the record indicated that Zonak had been treated for such an attack in May 2003 by Dr. Phair, had received follow-up care and experienced improvement within a week, and had not returned to Dr. Phair for treatment of any subsequent attacks.  (*Id.* at 22-23.) The ALJ also cited Dr. Merlin's report from August 13, 2003, which observed that Zonak had no difficulty with ambulation, and was able to sit, stand, walk, handle objects, hear, speak and travel, but should not lift or carry heavy objects.  (*Id.* at 23, 279-81.)  Finally, the ALJ noted that although Zonak testified that he did not do any household chores, in questionnaires completed on June 17, 2003 he reported that he gets his children ready for school and picks them up from school, and also does light household chores, food shopping, cooking, manages his finances,

does laundry, drives a car, and makes dinner for his family. (*Id.* at 23.) Thus, the ALJ concluded that Zonak's statements that he can only sit for 15 minutes, stand for five minutes and walk for 100 feet were inconsistent with the record as a whole. (*Id.*) Nonetheless, the ALJ found it was evident that Zonak suffered some pain and limitation due to his impairments, and as a result, his capacity to perform work was "significantly restricted." (*Id.*)

In sum, given the ALJ's thorough discussion, we cannot find that ALJ De Steno failed to specify his reasons for discounting Zonak's subjective assertions of pain and other limitations, or that ALJ De Steno's conclusions were not supported by medical evidence on the record. Therefore, the Court finds that the ALJ's decision to discount Zonak's subjective complaints of pain was supported by substantial evidence.

### 3. The ALJ's Determination of Zonak's RFC

Residual functional capacity is an administrative assessment of the most work a claimant is able to perform given the limitations imposed by his impairment. 20 C.F.R. §§ 404.1545 and 416.945; Soc. Sec. Ruling 96-8p. "In making a residual functional capacity determination, the ALJ must consider all evidence before him. Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reasons for discounting such evidence." *Burnett*, 220 F.3d at 121.

The ALJ determined that Zonak could not return to his past relevant work as a truck driver, loading and unloading heavy propane cylinders, each one weighing about fifty pounds. (R. at 24.) The ALJ found that Zonak, then 42, was a "younger individual" under 20 C.F.R. § 404.1563, with a high school education and no transferable skills from any past relevant work. The ALJ found that Zonak's exertional abilities were severely limited by his impairments, but that he nonetheless retained the capacity to perform many basic activities associated with work. (R. at 23.) The ALJ concluded that Zonak did not have any significant non-exertional limitations (*id.*), and retained the exertional residual functional capacity to perform the full range of sedentary work. (*Id.* at 24-25.) Therefore, the ALJ concluded that a finding of "not disabled" was directed by Medical-Vocational Rule 201.28. (*Id.* at 25.)

Zonak challenges the ALJ's conclusion that he had no significant non-exertional limitations, and argues that the ALJ failed to articulate a rational basis for his determination that Zonak could perform the full range of sedentary work. (Pl.'s Br. 23-27, 33.) The Court finds, however, that the basis for these determinations is clear from the ALJ's discussion. As the Court has already discussed, the ALJ properly articulated his reasons for finding that Zonak's subjective complaints of pain and other limitations were not fully credible to the extent alleged. Having reached this conclusion, the ALJ was left with evidence showing that although Zonak's impairments were severe and his limitations extreme, he retained the capacity to perform many basic work activities. (R. at 23.) This evidence included questionnaires filled out by Zonak in June 2003, in which Zonak indicates that he primarily experienced non-exertional impairments like shortness of breath, chest palpitations and fatigue as a result of heavy lifting and other

strenuous activity, such as that which was required in his previous employment as a truck driver. (R. at 81-96.) The ALJ also considered Zonak's testimony and the opinions of Drs. Kumar and Merlin. To some extent deferring to Zonak's testimony and Dr. Kumar's diagnoses, the ALJ discounted Dr. Merlin's conclusions, finding Zonak's exertional limitations to be more significant than what Dr. Merlin assessed.

Once again, this Court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams*, 970 F.2d at 1182. Rather, the Court's inquiry is whether the record, read in its entirety, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the Commissioner. Having fully analyzed the ALJ's opinion, the record evidence and the arguments of the parties in this matter, the Court concludes that the ALJ's determination that Zonak retained an RFC to perform the full range of sedentary work, and was therefore not disabled, is supported by substantial evidence.

## Conclusion

For the foregoing reasons, the decision of ALJ De Steno is **AFFIRMED**. An appropriate Order accompanies this Letter Opinion.

s/William J. Martini<br>
**William J. Martini, U.S.D.J.**